**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ROBERT BERG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MONOGRAM RESIDENTIAL TRUST, INC., E. ALAN PATTON, MARK T. ALFIERI, DAVID D. FITCH, TAMMY K. JONES, JONATHAN L. KEMPNER, W. BENJAMIN MORELAND, TIMOTHY J. PIRE, GS MONARCH PARENT, LLC, GS MONARCH ACQUISITION, LLC, and GREYSTAR REAL ESTATE PARTNERS,<br><br>Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on July 4, 2017 (the "Proposed Transaction"), pursuant to which Monogram Residential Trust, Inc. ("Monogram" or the "Company") will be acquired by affiliates of Greystar Real Estate Partners ("Greystar REP"), GS Monarch Parent, LLC ("Parent") and GS Monarch Acquisition, LLC ("Merger Sub," and together with Parent and Greystar REP, "Greystar").

2. On July 4, 2017, Monogram's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Greystar. Pursuant to the terms of the Merger Agreement, shareholders of

Monogram will receive $12.00 per share in cash.

3. On July 28, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Monogram common stock.

9. Defendant Monogram is a Maryland corporation and maintains its principal executive offices at 5800 Granite Parkway, Suite 1000, Plano, Texas 75024. Monogram's

common stock is traded on the NYSE under the ticker symbol "MORE."

10.   Defendant E. Alan Patton ("Patton") has served as a director and Chairman of the Board of Monogram since September 2013.

11.   Defendant Mark T. Alfieri ("Alfieri") has served as a Chief Operating Officer ("COO") of Monogram since 2006, as President of Monogram since 2013, and as a director and Chief Executive Officer ("CEO") of Monogram since 2014.

12.   Defendant David D. Fitch ("Fitch") has served as a director of Monogram since May 2014.

13.   Defendant Tammy K. Jones ("Jones") has served as a director of Monogram since April 2016.

14.   Defendant Jonathan L. Kempner ("Kempner") has served as a director of Monogram since November 2008.

15.   Defendant W. Benjamin Moreland ("Moreland") has served as a director of Monogram since May 2016.

16.   Defendant Timothy J. Pire ("Pire") has served as a director of Monogram since March 2016.

17.   The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18.   Defendant Parent is Delaware limited liability company and a party to the Merger Agreement.

19.   Defendant Merger Sub is a Delaware limited liability company, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

20.   Defendant Greystar REP is affiliated with Parent and Merger Sub.

## **CLASS ACTION ALLEGATIONS**

21.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Monogram (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.     This action is properly maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable. As of June 30, 2017, there were approximately 167,031,843 shares of Monogram common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to

protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28. Monogram is a fully integrated self-managed real estate investment trust that invests in, develops, and operates high quality multifamily communities offering location and lifestyle amenities.

29. The Company invests in stabilized operating properties and properties in various phases of development, with a focus on communities in select markets.

30. As of March 31, 2017, Monogram's portfolio includes investments in forty-nine multifamily communities in ten states comprising 13,674 apartment homes.

31. On July 4, 2017, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

32. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

33. Further, the Company must promptly advise Greystar of any proposals or inquiries received from other parties.

34. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Greystar a "matching right" with respect to any "Superior Proposal" made to the Company.

35. Further locking up control of the Company in favor of Greystar, the Merger Agreement provides for a "termination fee" of up to $65,679,359 payable by the Company to Greystar if the Individual Defendants cause the Company to terminate the Merger Agreement.

36. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

37. The merger consideration to be provided to plaintiff and the Class in the Proposed Transaction is inadequate.

38. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

39. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

40. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

41. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

42. First, the Proxy Statement omits material information regarding Monogram's

financial projections and the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley").

43. With respect to Monogram's financial projections, the Proxy Statement fails to disclose: (i) the line items used to calculate (a) net operating income (total rental revenue and direct property operating expenses), (b) EBITDA (earnings, interest, taxes, depreciation and amortization, and non-recurring items, (c) core funds from operations ("FFO") (net income (loss), depreciation and amortization on real estate assets, impairment write-downs of depreciable real estate/of investments in unconsolidated real estate partnerships, joint ventures, and subsidiaries, and noncontrolling interests), (d) adjusted core FFO (capital expenditures, straight-line rents, and stock compensation expense), and (e) unlevered free cash flow (capital expenditures, acquisition costs, and development costs); and (ii) a reconciliation of all non-GAAP to GAAP metrics.

44. With respect to Morgan Stanley's *Dividend Discount Analysis*, the Proxy Statement fails to disclose: (i) the range of implied terminal values of the Company's common stock; and (ii) the inputs underlying the discount rate range of 5.63% to 7.13%.

45. With respect to Morgan Stanley's *Discounted Free Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of implied terminal enterprise values of the Company; (ii) the estimated terminal values of the Company's third party asset and property management fee businesses; (iii) the inputs underlying the discount rate range of 4.70% to 5.63%; (iv) the forecasted outstanding debt and outstanding cash as provided by Company management; and (v) the number of fully diluted shares as provided by Company management.

46. With respect to Morgan Stanley's *Net Asset Value Analysis*, the Proxy Statement fails to disclose: (i) the financial forecasts for the properties under development as provided by

7

Company management; and (ii) the upward and downward adjustments made by Morgan Stanley in connection with the analysis.

47. With respect to Morgan Stanley's *Comparable Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Morgan Stanley in the analysis.

48. With respect to Morgan Stanley's *Analysis of Selected Precedent Transactions*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Morgan Stanley in the analysis.

49. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Additionally, when a company discloses information in proxy materials that includes non-GAAP financial metrics, the company must also disclose comparable GAAP metrics and a quantitative reconciliation of the non-GAAP metrics to GAAP metrics. Further, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

50. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Merger"; (iii) "Recommendation of the Company's Board of Directors"; (iv) "Opinion of the Company's Financial Advisor"; and (v) "Projected Financial Information."

51.     Second, the Proxy Statement fails to disclose whether the non-disclosure agreement executed by Monogram and "Party A" contained a provision that prevented Party A from submitting superior offers to acquire the Company.  The Proxy Statement only indicates that, "[o]n August 24, 2016, the Company entered into a confidentiality agreement with Party A which included customary non-disclosure provisions and a standstill provision subject to certain exceptions."

52.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "Reasons for the Merger"; and (iii) "Recommendation of the Company's Board of Directors."

53.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Monogram's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Monogram**

54.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Monogram is liable as the issuer of these statements.

56.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the

Proxy Statement.

57. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

58. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

59. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

60. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

61. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Greystar

62. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63. The Individual Defendants and Greystar acted as controlling persons of Monogram within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Monogram and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that plaintiff contends are false and misleading.

64. Each of the Individual Defendants and Greystar was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

65. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

66. Greystar also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

67. By virtue of the foregoing, the Individual Defendants and Greystar violated Section 20(a) of the 1934 Act.

68. As set forth above, the Individual Defendants and Greystar had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: August 7, 2017                           **LEVI & KORSINSKY LLP**

By:  */s/ Donald J. Enright*
Donald J. Enright (Bar No. 13551)
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, DC 20007
(202) 524-4290
denright@zlk.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800